Bruce E. Disenhouse, SBN 078760
**DISENHOUSE LAW APC**
3833 Tenth Street
Riverside, California 92501
Bruce@Disenhouselaw.net
(951) 530-3710 - Phone
(951) 543-4239 - Fax

Christopher D. Lockwood, SBN 110853
**ARIAS & LOCKWOOD, APLC**
1881 S. Business Center Drive, Suite 9A
San Bernardino, California 92408
Christopher.Lockwood@AriasLockwood.com
(909) 890-0125 - Phone
(909) 890-0185 - Fax

Attorneys for Defendants, COUNTY OF RIVERSIDE, THOMAS JOHNSON, NINA ZALUNARDO and BRIAN REMINGTON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY N. YOUNG, | CASE NO.: 5:17-cv-01630 JGB (SPx) |
| Plaintiff, | NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES |
| vs. | |
| CITY OF MENIFEE; COUNTY OF RIVERSIDE; THOMAS JOHNSON, NINA ZALUNARDO and BRIAN REMINGTON DOES 1 through 10, Inclusive, | DATE: February 7, 2022 |
| | TIME: 9:00 a.m. |
| | ROOM: 1 |
| Defendants. | |

PLEASE TAKE NOTICE that on February 7, 2022, 2022 at 9:00 a.m. in Courtroom 1 before Judge Jesus G. Bernal of the United States District Court, located at 3470 Twelfth Street, Riverside, California, Defendants COUNTY OF RIVERSIDE, BRIAN REMINGTON, NINA ZALUNARDO, and THOMAS JOHNSON will and hereby do move for an order from the Court granting summary judgment.

Alternatively, Defendants will move the court for partial summary judgment

of the following:

1.     All state law claims against community service officers Johnson and Zalunardo, and the County of Riverside sued in respondeat superior for their actions.

2.     All claims based on <u>Miranda</u> warnings.

3.     All arrest and false imprisonment claims.

4.     All claims based on alleged inaccurate reports.

5.     All claims based on medical care.

6.     The eighth claim for intentional infliction of emotional distress.

7.     The ninth claim for negligence.

8.     The tenth claim based on <u>Civil Code</u> § 52.1.

    The motion is based on the merits, and for the federal law claims it is also based on qualified immunity.

    The motion will be based on the attached memorandum of points and authorities, the declarations and exhibits filed with this motion, the proposed statement of uncontroverted facts and conclusions of law, and arguments of counsel at the hearing.

DATED: January 4, 2022          ARIAS & LOCKWOOD

By <u>  /s/ Christopher D. Lockwood  </u>
Attorneys for Defendants
County of Riverside, Thomas Johnson,
Nina Zalunardo and Brian Remington

**MEET AND CONFER COMPLIANCE**

I, Christopher D. Lockwood, declare:

I am a partner with Arias & Lockwood, which is co-counsel of record for Defendants.  I make this declaration of my own personal knowledge, and if called as a witness could testify to the following:

On December 16, 2021 I sent a draft of this motion to Plaintiff's counsel by email. The draft motion included all of the arguments, case citations and citations to evidence contained in this motion. We exchanged emails and then had a telephone discussion concerning the intended motion on January 3, 2022. We were not able to reach agreement on any of the issues presented by the motion.

I declare under penalty of perjury that the foregoing is true and correct. Executed in the County of San Bernardino on January 4, 2022.


                                              /s/
                                    Christopher D. Lockwood

MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I     Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II    A Defendant May Move for Summary Judgment on the Ground that the
      Uncontested Facts Show the Case Is Without Merit. . . . . . . . . . . . . . . . . . . 1

III   Plaintiff's Allegations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IV    Qualified Immunity Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V     Summary Adjudication Should Be Granted in Favor of Defendants Johnson
      and Zalunardo On All State Law Claims and in Favor of the County On All
      State Law Claims Based on Actions of Johnson and Zalunardo . . . . . . . . . 3

VI    Summary Judgment Should Be Granted On All Miranda Claims. . . . . . . . . 6
      A.  Analysis on the Merits.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      B. Qualified Immunity Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VII   Summary Judgment Should Be Granted on All Arrest Claims. . . . . . . . . . . 7
      A.  Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      B. There Was Probable Cause to Arrest. . . . . . . . . . . . . . . . . . . . . . . . . . 8
      C.  Additional Grounds Applicable to Deputies Johnson and Zalunardo. . . 10
      D. Qualified Immunity Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VIII  Summary Judgment Should Be Granted All Report Claims. . . . . . . . . . . . 11
      A.  Analysis on the Merits.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      B.  Qualified Immunity Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IX    Summary Judgment Should Be Granted on All Medical Care Claims. . . . . 13
      A.  Applicable Federal Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      B.  Applicable California Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      C.  Deputy Remington.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
      D.  Deputies Johnson and Zalunardo. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
      E.  Qualified Immunity Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

X     Summary Judgment Should Be Granted on The Eighth and Ninth Claims. . 19
      A.  The County of Riverside. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

MOTION FOR SUMMARY JUDGMENT

   B.  Eighth Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

   C.  Ninth Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

XI  Summary Judgment Should Be Granted On the Tenth Claim. . . . . . . . . . . 21

   A.  The Section 52.1 Claim Fails If the Other Federal Law Claims Fail. . . . 22

   B.  Plaintiff Cannot Prove Violence or Threats of Violence. . . . . . . . . . . . 22

   C.  Plaintiff Cannot Prove a Specific Intent to Violate a Constitutional

   Right. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

MOTION FOR SUMMARY JUDGMENT

1

**TABLE OF AUTHORITIES**

2

**Federal Cases**

3 Baker v. McCollan, 443 U.S. 137 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

4 Baldacchino v. County of El Dorado,

5       2009 U.S. Dist. Lexis 93748 (E.D. Cal. 2009). . . . . . . . . . . . . . . . . . . . . . . . 9

6 Chavez v. Martinez, 538 U.S. 760 (2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7 Chavez v. Robinson, 12 F.4th 978 (9th Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . . 6

8 District of Columbia v. Wesby, 138 S. Ct. 577 (2018).. . . . . . . . . . . . . . . . . . . . . 3

9 Doe v. City of Bridgeport, 2005 U.S. Dist. Lexis 10975 (D. Conn. 2005) . . . . . . . 11

10 Drain v. Barbee, 2011 U.S. Dist. Lexis 88070 (N.D. Ill. 2011). . . . . . . . . . . . . . 11

11 Emplrs Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214 (9th Cir. 2003) . . . 5

12 Fayer v. Vaughn, 649 F.3d 1061 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

13 Garcia v. City & Cty. of Honolulu,

14       2020 U.S. Dist. Lexis 171824 (D. Haw. 2020).. . . . . . . . . . . . . . . . . . . . . . . 12

15 Gill v. City of Murrieta, 2011 U.S. Dist. Lexis 9135 (C.D. Cal. 2011). . . . . . . . . 10

16 Hastings v. City Fort Myers, 2018 U.S. Dist. Lexis 107138 (M.D. Fla. 2018). . . . 10

17 Ismail v. County of Orange, 2013 U.S. Dist. Lexis 107921 (C.D. Cal. 2013). . . . . 11

18 Jenkins v. Keating, 147 F.3d 577 (7th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . 10, 11

19 J.K.J. v. City of San Diego, __ F.3d __, __ (9th Cir. 2021).. . . . . . . . . . . . . . . 13, 14

20 McCabe v. Gonzales, 2015 U.S. Dist. Lexis 129619 (D. Id. 2015). . . . . . . . . . . . 10

21 Meas v. City & County of San Francisco, 681 F. Supp. 2d 1128 (N.D. Cal. 2010).  8

22 Reese v. Cty. of Sacramento, 888 F.3d 1030 (9th Cir. 2018). . . . . . . . . . . . . . . . 23

23 Rivas-Villegas v. Cortesluna, __ U.S. __, 2021 U.S. Lexis 5311 (2021). . . . . . . . 3

24 Roberts v. McAfee, Inc., 660 F.3d 1156 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . 5

25 Wade v. Ca Dep't of Corr. & Rehab.,

26       2018 U.S. Dist. Lexis 111268 (N.D. Cal. 2018).. . . . . . . . . . . . . . . . . . . . . . . 5

27 Wearen v. Maryland, 2016 U.S. Dist. Lexis 99817 (D. Md. 2016) . . . . . . . . . . . . 12

28 Williams v. City of McComb, 2015 U.S. Dist. Lexis 131276 (M.D. Miss. 2015) . 11

MOTION FOR SUMMARY JUDGMENT

**California Cases**

Bay Area Rapid Transit Dist. v. Superior Court, 38 Cal. App. 4th 141 (1995). . . . 22

Cabesuela v. Browning-Ferris Indus., 68 Cal. App. 4th 101 (1998). . . . . . . . . 22, 23

Castellon v. U.S. Bancorp, 220 Cal. App. 4th 994 (2013). . . . . . . . . . . . . . . . . . . 21

Christensen v. Superior Court, 54 Cal. 3d 868 (1991).. . . . . . . . . . . . . . . . . . . . . 21

Cornell v. City and County of San Francisco, 17 Cal. App. 5th 766 (2017)... . . . . 23

de Villers v. County of San Diego, 156 Cal. App. 4th 238 (2007).. . . . . . . . . . . . 20

Doe v. State of California, 8 Cal. App. 5th 832 (2017). . . . . . . . . . . . . . . . . . . . . . 21

Fall River Joint Unified Sch. Dist. v. Superior Court,

     206 Cal. App. 3d 431 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Gabrielle A. v. County of Orange, 10 Cal. App. 5th 1268 (2017). . . . . . . . . . . . . 22

Gong v. City of Rosemead, 226 Cal. App. 4th 363, 376-0377 (2014) . . . . . . . . . . 5

Hamilton v. City of San Diego, 217 Cal. App. 3d 838 (1990).. . . . . . . . . . . . . 7, 10

Julian v. Mission Community Hospital, 11 Cal. App. 5th 360 (2017). . . . . . . . 21, 22

Koussaya v. City of Stockton, 54 Cal. App. 5th 909 (2020). . . . . . . . . . . . . . . . . 20

Lindstrom v. Hertz Corp., 81 Cal. App. 4th 644 (2000).. . . . . . . . . . . . . . . . . . . . 21

Nelson v. State of California, 139 Cal. App. 3d 72 (1982). . . . . . . . . . . . . . . . . . . 5

Payne v. County of San Bernardino, 2003 Cal. App. Unpub. Lexis 7022. . . . . . . . 5

People v. Adams, 175 Cal. App. 3d 855 (1985).. . . . . . . . . . . . . . . . . . . . . . . . . . . 8

People v. Atkins, 25 Cal. 4th 76 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

People v. Carrasco, 209 Cal. App. 4th 715 (2012) . . . . . . . . . . . . . . . . . . . . . . . . 8

Ross v. San Francisco Bay Area Rapid Transit Dist.,

     146 Cal. App. 4th 1507 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Shoyoye v. County of Los Angeles, 203 Cal. App. 4th 947 (2012). . . . . . . . . . . . 21

Spicer v. City of Camarillo, 195 Cal. App. 4th 1423 (2011) . . . . . . . . . . . . . . . . 21

Williams v. Braslow, 179 Cal. App. 3d 762 (1986). . . . . . . . . . . . . . . . . . . . . . . . 5

Willis v. City of Carlsbad (2020) 48 Cal. App. 5th 1104. . . . . . . . . . . . . . . . . . . . 4

MOTION FOR SUMMARY JUDGMENT

**Federal Statutes and Rules**

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 13

42 U.S.C. § 1985. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

F.R.Civ.P. Rule 56.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**California Statutes**

Civil Code § 52.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 13, 21, 23

Government Code § 815. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Government Code § 815.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Government Code § 844. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Government Code § 844.6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Government Code § 910. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Government Code § 950.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Government Code § 950.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Government Code § 950.6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Penal Code § 242. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Penal Code § 243. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Penal Code § 594. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Other authorities**

CACI 3066. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES
## I.  SUMMARY OF ARGUMENT

Plaintiff crashed his car into a City of Menifee code enforcement vehicle and then was involved in a confrontation with a City code enforcement officer. A Riverside County deputy sheriff later arrested Plaintiff based on statements made by the City code enforcement officer and corroborating physical evidence. Plaintiff alleges his arrest was made without probable cause, that he was denied medical care, and claims other violations of his rights. Defendants move for summary judgment based on undisputed evidence which shows that Plaintiff's case against the County of Riverside and its employees has no merit as a matter of law.

## II.  A DEFENDANT MAY MOVE FOR SUMMARY JUDGMENT ON THE GROUND THAT THE UNCONTESTED FACTS SHOW THE CASE IS WITHOUT MERIT

F.R.Civ.P. Rule 56.

## III.  PLAINTIFF'S ALLEGATIONS

In the operative third amended complaint (docket number 88) Plaintiff alleges:

On October 7, 2016, *City of Menifee* code enforcement officer Stoll went to Plaintiff's house in response to a code enforcement issue. (¶ 2) Plaintiff was not home at the time because he went to buy fast food, but drove home in response to his daughter's call. (¶ 2, 25, 26, 27) As Plaintiff pulled into his driveway, his vehicle made "minor, accidental contact" with the code enforcement vehicle. (¶ 3, 28) Officer Stoll was not in his vehicle and was talking on his cell phone at the time. (¶ 3, 4, 30)

Plaintiff went to put food he had purchased in his house but officer Stoll confronted him and told him to "drop it." (¶ 34) Officer Stoll pinned Plaintiff

1

against his vehicle, then punched Plaintiff and pepper sprayed him and kicked him. (¶ 32, 38, 41, 42, 45)

Several minutes later *County of Riverside* deputy Brian Remington arrived. (¶ 50) Deputy Remington arrested Plaintiff. (¶ 52) Deputy Remington did not provide Plaintiff with unspecified medical care. (¶ 53, 54) Deputy Remington transported Plaintiff to the police station. (¶ 54) Unidentified deputies kept Plaintiff "for hours" at the station without providing him food, water or medical care. (¶ 55)

Later that day, deputies Thomas Johnson and Nina Zalunardo transported Plaintiff to Loma Linda Hospital. (¶ 56) Deputy Johnson prevented doctors from providing unspecified pain medication and did not allow nurses to remove pepper spray from Plaintiff's face. (¶ 56) The deputies would not give Plaintiff food. When a nurse brought a sandwich, they would not remove handcuffs to allow him to eat it. (¶ 57) The deputies prevented the doctors from performing unidentified tests or providing unidentified treatment for unidentified injuries. (¶ 58)

Plaintiff was then transported to the Southwest Detention Center and was booked. Plaintiff asked an unidentified deputy for medication and was told it would be provided, but medication was never provided. (¶ 59) Plaintiff was released on bail the following morning. (¶ 60) Criminal charges were filed and pending at the time of the third amended complaint. (¶ 69)

Claims alleged are:

1.  42 U.S.C. § 1983 excessive force against Stoll and the City of Menifee.

2.  42 U.S.C. § 1983 false imprisonment against Deputy Remington.

3.  42 U.S.C. § 1983 denial of medical care against Stoll, Deputy Remington, and community service officers Johnson and Zalunardo.

4.  42 U.S.C. § 1985(3) against Stoll.

5.  Assault against Stoll

6.  Battery against Stoll.

7. False arrest and false imprisonment against all defendants

Motion for summary judgment

8. Intentional infliction of emotional distress against all defendants

9.  Negligence against all defendants

10.  Civic Code § 52.1 against Stoll, the City of Menifee and the County of Riverside.

### IV.  QUALIFIED IMMUNITY LAW

For the federal law claims, this motion is based on both the merits (or lack thereof) and on qualified immunity. Qualified immunity prohibits ex post facto civil liability. There is liability only if the defendant violated clearly established law which a reasonable person should know. Rivas-Villegas v. Cortesluna, 211 L. Ed. 2d 164, 168-169 (2021). The law is clearly established only if there is (1) published case authority on point by the Supreme Court or the Ninth Circuit or (2) a "robust consensus" of lower court authority. District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018). The law is clearly established only if existing law placed the issue "beyond debate." District of Columbia, 138 S. Ct. at 589 (2018); Rivas-Villegas, 211 L. Ed. 2d at 168.

### V.  SUMMARY ADJUDICATION SHOULD BE GRANTED IN FAVOR OF DEFENDANTS JOHNSON AND ZALUNARDO ON ALL STATE LAW CLAIMS AND IN FAVOR OF THE COUNTY ON ALL STATE LAW CLAIMS BASED ON THEIR ACTIONS

Several of the state law claims are against Riverside County Sheriff's Department community service officers Johnson and Zalunardo, and the County of Riverside is also sued in respondeat superior for their actions:

Claim 7: False arrest and false imprisonment against all defendants.

Claim 8: Intentional infliction of emotional distress against all defendants.

Claim 9:  Negligence against all defendants.

Claim 10: Civil Code § 52.1 against the County of Riverside.

3

Before a public entity or a public employee can be sued under California law, the plaintiff must first timely file a claim for damages with the employing public entity. <u>Government Code</u> § 950.6 and 910. The claim for damages must include, among other things:

(c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.

(d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.

(e) The name or names of the public employee or employees causing the injury, damage, or loss, if known. <u>Government Code</u> § 910.

A significant purpose of the claim filing requirements and the required information is to allow public entities to conduct an early investigation of the facts. <u>Willis v. City of Carlsbad</u>, 48 Cal. App. 5th 1104, 1118 (2020) ("The policy underlying the claims presentation requirements is to afford prompt notice to public entities. This permits early investigation and evaluation of the claim and informed fiscal planning in light of prospective liabilities.").

Plaintiff's only contact with community service officers Johnson and Zalunardo occurred during the time they transported him from the Perris station to the hospital for an OK to book examination, and from there to the jail. (Third amended complaint ¶ 56; declarations of Johnson ¶ 4 and 15 and Zalunardo ¶ 4 and 15) Plaintiff filed a government claim for damages with the County of Riverside, but that claim did not mention community service officers Johnson and Zalunardo by name or description and there is nary a word about anything that occurred at the hospital. (Exhibit 1) The failure to mention them in this claim precludes suit against them individually and against the County in respondeat superior for their alleged actions for two separate reasons.

First, a plaintiff is precluded from suing a public employee who is not named

in the claim for damages. <u>Government Code</u> § 950.2. There is an exception only if the plaintiff pleads and proves that, within the six month period to file a claim for damages, the plaintiff did not know either (1) the names of the employees or (2) that they were public employees. <u>Government Code</u> § 950.4. When a plaintiff fails to mention public employees in the claim for damages, state law claims against them are barred unless the plaintiff both alleges and proves the exception addressed in § 950.4. <u>Williams v. Braslow</u>, 179 Cal. App. 3d 762, 771-773 (1986); <u>Payne v. County of San Bernardino</u>, 2003 Cal. App. Unpub. Lexis 7022[1]; <u>Wade v. Ca Dep't of Corr. & Rehab.</u>, 2018 U.S. Dist. Lexis 111268, *20-22 (N.D. Cal. 2018).

Plaintiff did not allege the exception. Both community service officers were in uniforms which had their names displayed on the night of the incident, and Plaintiff spent several hours with them. (Declarations of Johnson ¶ 5 and Zalunardo ¶ 5)

Second, a plaintiff is precluded from suing based on factual allegations which are not "fairly reflected" in the claim. <u>Fall River Joint Unified Sch. Dist. v. Superior Court</u>, 206 Cal. App. 3d 431 (1988) (claim alleging a injury from a defective school door does not support a cause of action based on failure to supervise students); <u>Nelson v. State of California</u>, 139 Cal. App. 3d 72 (1982) (claim alleging medical malpractice concerning a prisoner does not support a cause of action for failure to summon medical care); <u>Gong v. City of Rosemead</u>, 226 Cal. App. 4th 363, 376-0377 (2014) (claim alleging denial of a right to build did not support a cause of

---

[1]A California court cannot consider an unpublished decision, but there is no such limitation in federal court. <u>Emplrs Ins. of Wausau v. Granite State Ins. Co.</u>, 330 F.3d 1214, 1220, n. 8 (9th Cir. 2003) ("Granite correctly notes that we may consider unpublished state decisions, even though such opinions have no precedential value."); <u>Roberts v. McAfee, Inc.</u>, 660 F.3d 1156, 1167, n.6 (9th Cir. 2011) ("Even though unpublished California Courts of Appeal decisions have no precedential value under California law, the Ninth Circuit is 'not precluded' from considering such decisions 'as a possible reflection of California law.' [Citation]").

action for extortion or fraudulent misrepresentation). The claim makes *no* mention of the hospital.

In short, summary judgment should be granted on all state law claims against defendants Johnson and Zalunardo and, accordingly, the County in respondeat superior.

## VI. SUMMARY JUDGMENT SHOULD BE GRANTED ON ALL <u>MIRANDA</u> CLAIMS

Plaintiff three times alleges that he was not read his <u>Miranda</u> warnings at the time of his arrest. (Third amended complaint 13/21-22, 22/2, 34/9) Not reading <u>Miranda</u> rights at the time of arrest is alleged to be a basis for liability in claims 2 and 10.

### A.  ANALYSIS ON THE MERITS

There is no constitutional right to <u>Miranda</u> warnings; the fifth amendment right is not to "be compelled in any criminal case to be a witness against himself." Not reading <u>Miranda</u> rights to a person can be a basis for excluding evidence at a criminal trial. If statements made by the arrested person before a <u>Miranda</u> warning are *used in court against the defendant*, there is potential civil liability. But asking questions without first reading <u>Miranda</u> warnings, standing alone, is not a violation of federal law, and it is not a basis for liability if statements made before the <u>Miranda</u> warnings are not used in court against the defendant. <u>Chavez v. Martinez</u>, 538 U.S. 760, 767 (2003); <u>Chavez v. Robinson</u>, 12 F.4th 978, 889-890 (9th Cir. 2021).

These claims fail on the pleadings. Plaintiff does not allege that any statements he made were used against him in any court proceeding. The criminal case was dismissed before trial. (Plaintiff's deposition 181/4-23)

These claims also fail on the evidence. Plaintiff was given <u>Miranda</u> warnings by Deputy Remington and then agreed to a lengthy interview before he was

transported by CSO Johnson and Zalunardo. (Plaintiff's deposition 226/9-14;
exhibit 10) Deputy Remington did not use any statements made by Plaintiff prior to
<u>Miranda</u> warnings against him in court. (Remington declaration ¶ 26)

**B. QUALIFIED IMMUNITY ANALYSIS**

Defendants Supreme Court and Ninth Circuit cases find no constitutional
prohibition on talking to a suspect without <u>Miranda</u> warnings. Rather, there is a
violation only if those statements are used against the defendant in court. Since that
has not occurred, there were no violations of any clearly established law associated
with this conduct, and qualified immunity clearly applies.

## VII.  SUMMARY JUDGMENT SHOULD BE GRANTED ON ALL ARREST CLAIMS

Plaintiff alleged several claims based on the arrest:

Claim 2: 42 U.S.C. § 1983 false imprisonment against Deputy Remington.

Claim 7: False arrest and false imprisonment against all defendants.

Claim 8 for intentional infliction of emotional distress appears to be based in
part on the arrest.

Claim 9 for negligence appears to be based in part on the arrest.

Part of claim 10 for <u>Civil Code</u> § 52.1 is based on the arrest. (Third amended
complaint page 34/7 and 34/10)

**A.  APPLICABLE LAW**

While it is possible to commit false imprisonment without the making of an
arrest, when there is an arrest, false arrest and false imprisonment are the same
thing: there is a false arrest or false imprisonment only when there is no probable
cause to arrest. <u>Fayer v. Vaughn</u>, 649 F.3d 1061, 1064 (9th Cir. 2011); <u>Hamilton v.
City of San Diego</u>, 217 Cal. App. 3d 838, 843-844 (1990). The standard for
probable cause under federal or California law is essentially the same:

Probable cause to arrest exists when officers have knowledge or

reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested. [Citation] <u>Fayer</u>, 649 F.3d at 1064.

An officer has probable cause for a warrantless arrest if the facts known to him "would lead a man of ordinary care and prudence to believe  and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." [Citation] <u>People v. Adams</u>, 175 Cal. App. 3d 855, 861 (1985).

"The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted - indeed, for every suspect released." <u>Baker v. McCollan</u>, 443 U.S. 137 (1979).

**B. THERE WAS PROBABLE CAUSE TO ARREST**

The arrest and prosecution were based on two crimes: (1) <u>Penal Code</u> § 243 (battery) and (2) <u>Penal Code</u> § 594 (vandalism). (Exhibit 6) There was probable cause to arrest for both crimes.

Vandalism requires proof that a person "maliciously" damaged the property of another. <u>Penal Code</u> § 594(a). An act is "malicious" if there is "a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act." <u>People v. Atkins</u>, 25 Cal. 4th 76, 85 (2001). See <u>People v. Carrasco</u>, 209 Cal. App. 4th 715 (2012) (throwing a statue through a window and breaking a car window); <u>People v. Arroyas</u>, 96 Cal. App. 4th 1439 (2002) (graffiti); <u>Meas v. City & County of San Francisco</u>, 681 F. Supp. 2d 1128, 1136 (N.D. Cal. 2010) (kicking a police car and causing damage); <u>Baldacchino v. County of El Dorado</u>, 2009 U.S. Dist. Lexis 93748, *3-4 (E.D. Cal. 2009) (kicking out a window of a police car). Vandalism is a felony if the damage is over $400. <u>Penal Code</u> § 594(b)(1); <u>People v. Carrasco</u>, 209 Cal.App.4th at 719.

Officer Stoll reported to Deputy Remington that Plaintiff crashed his vehicle

8

into the rear of Stoll's vehicle, and Stoll said he thought the crash was intentional because there was nothing obscuring Plaintiff's view of Stoll's vehicle. (Remington declaration ¶ 8) The damage was well over $400. (Remington declaration 14; exhibits 2 and 9)

Physical evidence supports the statement that Plaintiff intentionally crashed into Stoll's vehicle. Stoll's vehicle had a large dent on the right side of the rear bumper, a broken taillight, and damage to the passenger side rear quarter panel. (Remington declaration ¶ 7; exhibit 2) Plaintiff was driving a Ford Excursion. (Plaintiff's deposition 140/24-141/1) There were scratches and paint transfers on the left side of the front bumper of Plaintiff's vehicle consistent with the impact. (Remington declaration ¶ 7; exhibit 3) Deputy Remington measured the distance Plaintiff had driven after turning onto the street at 750 feet. It was a straight dirt road with no sight obstructions. (Remington declaration ¶ 14) Officer Stoll's vehicle was equipped with white flashing lights on the rear window and taillights. Deputy Remington inspected the road post-impact and found no signs of braking by Plaintiff prior to the collision. (Remington declaration ¶ 14) Plaintiff admitted crashing into Stoll's vehicle and only contended it was accidental. He initially testified that he did not see the vehicle before he hit it. (Plaintiff's deposition 38/6-12) He later testified he did see the vehicle before impact and applied his brakes about 10 feet before he hit it. (Plaintiff's deposition 39/1-9) Again, there were no signs of braking before the impact. (Remington declaration ¶ 14)

A battery requires proof of "any willful and unlawful use of force or violence upon the person of another." Penal Code § 242. Officer Stoll reported to Deputy Remington that Plaintiff punched Officer Stoll on his left cheek with his fist. (Remington declaration ¶ 9) Physical evidence supported this statement. Officer Stoll had an abrasion on his left cheek. (Remington declaration ¶ 7; exhibit 4) Deputy Remington did not observe any injuries to Plaintiff. (Remington declaration ¶ 11) Plaintiff testified he told Deputy Remington that Officer Stoll had hit the back

MOTION FOR SUMMARY JUDGMENT

of his head hard enough to knock him out (Plaintiff's deposition 49/15-22, 50/22-24, 51/2-3, 52/3-7), but that assertion was inconsistent with the lack of any visible injuries on Plaintiff. In deposition Plaintiff also denied physical contact with Officer Stoll (Plaintiff's deposition 50/12-16, 159/12-14) but that assertion was clearly inconsistent with the abrasion on Officer Stoll's face.

People who are arrested often deny committing the crimes for which they were arrested, and there are often factual disputes about whether a person is guilty of committing a crime. Plaintiff's denial that he crashed his vehicle intentionally, and his denial that he struck Officer Stoll, did not defeat probable cause but merely provided triable issues of fact to be resolved in the criminal case. McCabe v. Gonzales, 2015 U.S. Dist. Lexis 129619, *22 (D. Id. 2015) ("Gonzales was not required to believe McCabe's explanation that he did not own the sunglasses case or he was unaware it contained an illegal substance"); Gill v. City of Murrieta, 2011 U.S. Dist. Lexis 9135, *7 (C.D. Cal. 2011) ("The officer, moreover, has no obligation to give credence to a suspect's self-serving statements, and he has no obligation to investigate fully before making a probable cause determination"); Hamilton, 217 Cal.App.4th at 841-842, 846.

## C.  ADDITIONAL GROUNDS APPLICABLE TO CSO JOHNSON AND ZALUNARDO

These two community service officers did not arrest Plaintiff but only transported Plaintiff from the Perris station to the hospital for an OK to book examination after Plaintiff had been arrested and taken into custody, and then from the hospital to the jail. (Johnson declaration ¶ 4 and15; Zalunardo declaration ¶ 4 and15) An officer whose only contact with an arrested person is after the arrest has been completed obviously has not arrested that person and cannot be liable for false arrest. Jenkins v. Keating, 147 F.3d 577, 583 (7th Cir. 1998); Hastings v. City Fort Myers, 2018 U.S. Dist. Lexis 107138, *13 (M.D. Fla. 2018). Law enforcement officers who merely participate in ministerial actions after an arrest has occurred

cannot be held liable for false arrest or false imprisonment. Jenkins, 147 F.3d at 583-584 (officer who signed a criminal complaint after an arrest occurred); Williams v. City of McComb, 2015 U.S. Dist. Lexis 131276, *4-5 (M.D. Miss. 2015) (officer who transported the plaintiff to the station after the arrest); Drain v. Barbee, 2011 U.S. Dist. Lexis 88070, *10 (N.D. Ill. 2011) (same).  There was no obligation by Johnson or Zalunardo to re-determine whether probable cause to arrest existed. Williams, 2015 U.S. Dist. Lexis 131276, *5-6  See also Doe v. City of Bridgeport, 2005 U.S. Dist. Lexis 10975, *5-6 (D. Conn. 2005) (an officer who arrests pursuant to a warrant has no duty to determine whether there was probable cause for the warrant).

**D. QUALIFIED IMMUNITY ANALYSIS**

Under a qualified immunity analysis, the question is not whether probable cause existed but whether "arguable probable cause" existed. Ismail v. County of Orange, 2013 U.S. Dist. Lexis 107921, *13-14 (C.D. Cal. 2013) ("to determine whether an officer can raise the defense of qualified immunity to an unlawful arrest claim, the inquiry is not whether probable cause exists, but whether 'arguable probable cause' exists."). Even if there is a triable issue concerning actual probable cause, there clearly was at least arguable probable cause, and these claims fail accordingly.

## VIII. SUMMARY JUDGMENT SHOULD BE GRANTED ALL REPORT CLAIMS

Plaintiff repeatedly alleges that all defendants prepared false reports. (Third amended complaint 22/4-5, 31/7, 32/26, 34/15-16) False reports are alleged to be a basis for liability in claims 2, 9 and 10.

**A.  ANALYSIS ON THE MERITS**

Community service officers Johnson and Zalunardo, who only transported Plaintiff, did not prepare any reports concerning Plaintiff. The only written

1   documents they prepared were logs which merely stated the start and ending times

2   of the transportation and the locations they transported him to. (Johnson declaration

3   ¶ 17; Zalunardo declaration ¶ 17; exhibit 5)

4        The report prepared by Deputy Remington is exhibit 6. In deposition,

5   Plaintiff initially said "everything" in the report was inaccurate, but he later

6   admitted he did not know whether the report addressed an interview with witness

7   Linda Lewis and he did not know whether Plaintiff's interview was included in the

8   report. (Plaintiff's deposition 94/3-95/8)

9        In fact, the report was accurate. It accurately summarized statements made by

10   Officer Stoll and witness Linda Lewis, accurately summarized what Plaintiff said,

11   and accurately summarized Deputy Remington's observations and measurements.

12   (Remington declaration ¶ 23) Plaintiff's disagreement with the statements made by

13   Officer Stoll does not mean the report was false, but only that he disagreed with the

14   statements made by Officer Stoll.

15   **B.  QUALIFIED IMMUNITY ANALYSIS**

16        Even if there were evidence of errors in the report, there is no clearly

17   established right to accurate reports. Wearen v. Maryland, 2016 U.S. Dist. Lexis

18   99817, *4-5 (D. Md. 2016) ("The unsubstantiated allegation of a 'false' police

19   report does not implicate a constitutional violation as there is no clearly established

20   constitutional right to an accurate police report."); Garcia v. City & Cty. of

21   Honolulu, 2020 U.S. Dist. Lexis 171824, *52 (D. Haw. 2020) ("Defendants

22   Arakawa and Hee also correctly argue that the filing of a false police report, without

23   more, does not amount to a constitutional violation. [Citation] District courts in the

24   Ninth Circuit have repeatedly held as much. [Citations]").

25        For all these reasons, all claims based on alleged false reporting necessarily

26   fail.

27   ///

28   ///

MOTION FOR SUMMARY JUDGMENT

## IX.  SUMMARY JUDGMENT SHOULD BE GRANTED
## ON ALL MEDICAL CARE CLAIMS

Plaintiff asserted several claims based on the contention that he was denied medical care:

Claim 3: 42 U.S.C. § 1983 denial of medical care against Stoll, deputy Remington and CSO Johnson and Zalunardo.

Claim 8 for intentional infliction of emotional distress appears to be based in part on medical care.

Claim 9 for negligence appears to be based in part on medical care. (Third amended complaint 30/22-31/6 and 32/14-25)

Part of claim 10 for Civil Code § 52.1 is based on medical care. (Third amended complaint 34/11-14 and 34/17-18)

## A.  APPLICABLE FEDERAL LAW

A recent decision of the Ninth Circuit, J.K.J. v. City of San Diego, __ F.4th __, 2021 U.S. App. Lexis 33778 (9th Cir.2021), succinctly summarized the law concerning post-arrest medical care.

> Pretrial detainees in state custody "have a constitutional right to adequate medical treatment" under the Fourteenth Amendment. [Citation] "[C]laims for violations of [this right . . . [are] evaluated under an objective deliberate indifference standard." [Citation] As we have recently elaborated, the elements of such a claim are:
>
> > (i) the defendant made an intentional decision with respect to the conditions under which the [decedent] was confined; (ii) those conditions put the [decedent] at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of

1        the defendant's conduct obvious; and (iv) by not taking such

2        measures, the defendant caused the [decedent's] injuries.

3  [Citation]. "With respect to the third element, the defendant's conduct

4  must be objectively unreasonable, a test that will necessarily turn on

5  the facts and circumstances of each particular case." [Citation]. "The

6  mere lack of due care by a state official does not deprive an individual

7  of life, liberty, or property under the Fourteenth Amendment."

8  [Citation] Accordingly, the plaintiff must plausibly allege facts

9  demonstrating "more than negligence but less than subjective

10  intent—something akin to reckless disregard." [Citation] Under the

11  Fourth Amendment, which J.K.J. says should also apply here, officers

12  are prohibited from using "excessive . . . force . . . in the course of

13  transporting an arrestee." [Citation] A failure to summon emergency

14  medical aid can constitute excessive force if it is "objectively

15  [un]reasonable." [Citation]

16        We assess objective unreasonableness, under both the Fourth

17  and Fourteenth Amendments, "from the perspective of a reasonable

18  officer on the scene, including what the officer knew at the time, not

19  with the 20/20 vision of hindsight." [Citations]

20  **B.  APPLICABLE CALIFORNIA LAW**

21        <u>Government Code</u> § 844.6 provides for liability for failure to "summon"

22  medical care only when "the employee knows or has reason to know that the

23  prisoner is in need of immediate medical care." Section 844.6 applies to a

24  "prisoner," which is essentially someone who has been booked. <u>Government Code</u>

25  § 844. Plaintiff's claims are based on pre-booking actions. There do not appear to

26  be any published California cases which address the standard applicable to medical

27  care between the time of arrest and the time of booking. However, it would be

28  illogical to provide a greater right to medical care for people before booking than

after booking, and a California court likely would apply the same standard.

## C. DEPUTY REMINGTON

Plaintiff's allegations are vague, but in deposition the only medical care he mentioned that he wanted while he was with Deputy Remington is washing off pepper spray which had been applied by Officer Stoll. Plaintiff testified he asked Deputy Remington to be allowed to use a water hose and Deputy Remington said no. (Plaintiff's deposition 65/12-18) However, just before Deputy Remington arrived, officer Stoll provided Plaintiff with a bottle of water so he could use it to wash off the pepper spray, and Plaintiff did use the water for that purpose. (Plaintiff's deposition 65/19-66/24, 162/10-12, 166/9-17; Remington declaration ¶ 11)

As detailed below, Plaintiff did not have a medical condition which required any urgent medical treatment. Plaintiff was transported to a hospital for an OK to book examination and the hospital's findings addressed below showed no serious need for medical treatment.

## D. CSO JOHNSON AND ZALUNARDO

These two community service officers transported Plaintiff to the hospital for an OK to book examination and then transported him to the jail after the hospital cleared him for booking. The transport times were:

|  |  |  |
|---|---|---|
| 3:36 p.m. | Transport to Loma Linda (Exhibit 5, entry at 15:36) |
| 4:00 p.m. | Arrive at Loma Linda (Exhibit 5, entry at 16:00) |
| 7:09 p.m. | Transport to jail (Exhibit 5, entry at 19:06) |
| 7:24 p.m. | Arrive at jail (Exhibit 5, entry at 19:24) |

The only allegations against them are:

• They did something to prevent Plaintiff from receiving pain medication (14/9-10)

• They did not allow nurses to wipe Plaintiff's face to remove pepper spray (14/16-17)

1    •    They refused to provide Plaintiff with food, would not remove handcuffs

2    when he was given a sandwich, and then took it away from him before he

3    was finished. (14/18-28)

4    •    They would not allow doctors to perform further tests or treat his injuries.

5    (15/1-4)

6    In deposition, Plaintiff admitted there is no factual basis for any of these

7    allegations. He said CSO Zalunardo didn't do anything.

8        Q. Okay. So going back to at the hospital, how did Community

9    Service Officer Zalunardo, the female, how did she prevent medical

10    staff from providing you treatment?

11        A. She didn't -- she didn't do anything. (84/14-18)

12    The lady officer, she -- she didn't do -- she didn't do anything.

13    She just -- she just sat there. It was the male officer running the show.

14    (Plaintiff's deposition 86/24-87/2)

15        THE WITNESS: Like I said, the lady officer didn't do anything.

16    She had to ask him before she can do anything. (87/11-13)

17    He admitted he did not hear anything to support any of his contentions

18    concerning CSO Johnson.

19        Q. Did you hear him tell medical staff not to remove the pepper

20    spray from your face?

21        A. I didn't hear anything. I was put in the corner. (81/2-5)

22        A. I didn't hear him say anything. I didn't hear him talk. I didn't

23    hear him say anything.  (81/16-17)

24        Q. Okay. So you -- you heard her [the nurse] say something to

25    the male officer about having something to remove pepper spray. But

26    you –

27        A. Yes.

28        Q. Okay. But you did not hear what the male officer said in

1    response. Is that correct?

2    A. That's correct. I did not hear him. (81/25-82/6)

3    Q. What did CSO Johnson do to prevent medical providers from

4    providing you treatment that day?

5    A. Ma'am, like I said, he placed me in the corner away from

6    everybody. So I'm behind -- I'm behind the door in a wheelchair in a

7    corner. I'm at least -- I'm at least 10 or 12 feet away from them. I'm in

8    a corner.

9    Q. Do you think that medical staff did not know you were there?

10    A. They knew I was there, but the officer was up there by the

11    staff.

12    Q. Okay. Did you hear CSO Johnson, the male officer, tell

13    medical staff not to provide you any treatment?

14    MR. JOSEPHSON: Objection. Asked and answered.

15    BY MS. ANDERSEN: Q. You can answer.

16    A. No. No, I did not hear him. (85/10-86/1)

17    Q. . . Did CSO Johnson, the male officer, do anything else at the

18    hospital other than allegedly placing you in a corner on a wheelchair

19    that prevented medical staff from providing you treatment at the

20    hospital that day?

21    A. No. I could not hear him. (87/20-24)

22    He admitted his only basis for suing CSO Johnson is because CSO Johnson

23    talked to hospital employees during conversations *which Plaintiff did not hear* and

24    Plaintiff is, essentially, guessing at what was discussed.

25    Q. . . Did CSO Johnson, the male officer, do anything else at the

26    hospital other than allegedly placing you in a corner on a wheelchair

27    that prevented medical staff from providing you treatment at the

28    hospital that day?

1     A. No. I could not hear him.

2     Q. I'm asking did he do anything? I'm not asking if you heard

3 him. Did he do anything other than allegedly placing you in a corner

4 on a wheelchair to prevent medical staff from providing you treatment

5 that day?

6     A. I'm going to say it again. No. I did not hear him.

7     Q. Okay. What do you base that intention off of, that he

8 prevented medical staff from providing you treatment then other than

9 him placing you in a corner in a wheelchair?

10     A. Like I said, he was the man in charge. The – the nurses would

11 have to talk to him first before anybody touched me. (87/20-88/13)

12   In fact, community service officers Johnson and Zalunardo did not do

13 anything to interfere with Plaintiff's medical treatment or with the hospital

14 providing him with food and water. (Johnson declaration ¶ 8-13; Zalunardo

15 declaration ¶ 8-13) The medical records from the hospital do not reflect any

16 interference by the officers with Plaintiff's treatment. (Dr. Vilke declaration ¶ 20;

17 exhibit 8)

18   Plaintiff did not have a medical condition which required any urgent medical

19 treatment. Plaintiff's only complaints at the hospital were "neck pain, facial pain

20 and a burning sensation to the face." (Exhibit 8, page 23) The hospital found no

21 visible injuries other than the effects of pepper spray. (Dr. Vilke declaration ¶ 16;

22 exhibit 8, page 26 ["patient had no signs of trauma to the face head or neck"];

23 Plaintiff's deposition 190/7-17) Plaintiff denied any loss of consciousness. (Dr.

24 Vilke declaration ¶ 16; exhibit 8, page 23) A CT scan of his head and cervical spine

25 was unremarkable, a neurological exam was normal, and there were no objective

26 indications of any head injury. (Dr. Vilke declaration ¶ 16, 19; exhibit 8, pages 15-

27 18 [CT scans], 26 [no head injury], 65 [neurological exam]) The hospital found "no

28 signs of trauma to the face head or neck." (Exhibit 8, page 27) The hospital

MOTION FOR SUMMARY JUDGMENT

1    discharged him with an OK to book. (Dr. Vilke declaration ¶ 16; exhibit 8, page 26)

2    The hospital records also indicate "The patient is resting comfortably in the

3    wheelchair, eating a sandwich." (Exhibit 8, page 26)

4        Plaintiff contends the deputies took him to the jail before a prescription for an

5    unidentified pain medication was filled. (Plaintiff's deposition 82/11-22)

6    Community service officers never transport medication; rather, they bring

7    prescriptions to the jail for jail medical staff to fill. (Johnson declaration ¶ 16) CSO

8    Johnson brought all medical paperwork to the jail. (Johnson declaration ¶ 16)

9    Plaintiff admitted he was given Tylenol when he arrived at the jail. (Plaintiff's

10    deposition 83/8-13) Plaintiff was released from the jail the following morning, and

11    at that point he was free to seek any medication he wanted. (Plaintiff's deposition

12    83/14-18)

13    **E.  QUALIFIED IMMUNITY ANALYSIS**

14        The actions of the deputies did not violate any clearly established law. Ninth

15    Circuit cases require medical care only if the plaintiff has a medical condition

16    which places the plaintiff "at substantial risk of suffering serious harm" and the

17    defendant fails to take any action to provide medical care for that medical

18    condition. Plaintiff was given water to wash off the pepper spray even before

19    Deputy Remington arrived. No clearly established law requires water to be

20    provided more than once, especially when the person is seen by a doctor. Plaintiff

21    had an examination and substantive medical testing at a hospital which found no

22    serious medical condition. Plaintiff was given pain medication before he was

23    booked. None of these actions violated any clearly established law. Summary

24    judgment on these claims is proper.

25

26        **XI.  SUMMARY JUDGMENT SHOULD BE GRANTED ON**

27           **THE EIGHTH AND NINTH CLAIMS**

28    The eighth claim for intentional infliction of emotional distress is against "all

MOTION FOR SUMMARY JUDGMENT

defendants." The ninth claim alleges negligence against the County of Riverside (count 1) and deputy Remington and community service officers Zalunardo and Johnson (count 2).

## A.  THE COUNTY OF RIVERSIDE

The County is sued primarily for not enacting different policies and procedures (¶ 121) and for not doing more training and supervision (¶ 127). Under California law, public entities are liable only to the extent expressly provided by statute or a California Constitutional provision. Government Code § 815; Ross v. San Francisco Bay Area Rapid Transit Dist., 146 Cal. App. 4th 1507, 1513 (2007). No statute or California Constitutional provision requires the County to provide training or supervision. See de Villers v. County of San Diego, 156 Cal. App. 4th 238, 253 (2007) ("there is no statutory basis for declaring a governmental entity liable for negligence in its hiring and supervision practices"); Koussaya v. City of Stockton, 54 Cal. App. 5th 909, 943 (2020) (same).

To the extent the County is sued in respondeat superior for the actions of its employees, a public entity is not liable if its employees are not liable. Government Code § 815.2. The potential liability of the deputies is addressed below.

## B.  EIGHTH CLAIM

The eighth claim alleges intentional infliction of emotional distress.

The elements of the tort of intentional infliction of emotional distress are: "'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. . . .' Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." [Citation] The defendant must have engaged in "conduct intended to inflict injury or

engaged in with the realization that injury will result." [Citation]

Christensen v. Superior Court, 54 Cal. 3d 868, 903 (1991).

The eighth claim is based on the arrest, Miranda, report and medical care claims addressed above. That analysis is incorporated by reference. Even if there is a triable issue on those claims, nothing the County employees did was either extreme or outrageous under the circumstances. Summary judgment must be granted on these claims.

## C.  NINTH CLAIM

The ninth claim is based on negligence.

> The elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury. Castellon v. U.S. Bancorp, 220 Cal. App. 4th 994, 998 (2013).

Whether a duty exists, and the scope of any such duty, are a question of law for the court. Lindstrom v. Hertz Corp., 81 Cal. App. 4th 644, 649 (2000).

The ninth claim is also based on the arrest, Miranda, report and medical care claims addressed above. That analysis, and the applicable law concerning duties, is incorporated by reference. Nothing the deputies did violated any duty owed to Plaintiff, and summary judgment is proper.


# X.  SUMMARY JUDGMENT SHOULD BE GRANTED
# ON THE TENTH CLAIM

The tenth claim is based on Civil Code § 52.1. That statute provides a cause of action against a person who "interferes by threat, intimidation, or coercion" with the exercise of federal Constitutional rights. "[T]he statute was intended to address only egregious interferences with constitutional rights, not just any tort. The act of interference with a constitutional right must itself be deliberate or spiteful." Julian v. Mission Community Hospital, 11 Cal. App. 5th 360, 395 (2017), quoting

Shoyoye v. County of Los Angeles, 203 Cal. App. 4th 947, 959 (2012).

**A.  THE SECTION 52.1 CLAIM FAILS IF THE OTHER FEDERAL LAW CLAIMS FAIL**

Section 52.1 itself provides no rights, but is only a procedural basis for suit for violations of federal law. Absent a violation of federal law, there is no cause of action. Spicer v. City of Camarillo, 195 Cal. App. 4th 1423, 1429 (2011) ("There is no violation of Spicer's statutory or constitutional rights. Absent a violation, there is no basis for a claim pursuant to the Civil Rights Act of Civil Code section 52.1.").

**B.  PLAINTIFF CANNOT PROVE VIOLENCE OR THREATS OF VIOLENCE**

In addition to the other elements of this cause of action, a plaintiff must prove violence or threats of violence. Doe v. State of California, 8 Cal. App. 5th 832, 842 (2017) ("To prevail on a cause of action under Civil Code section 52.1, the plaintiff must show that the defendant interfered with or attempted to interfere with the plaintiff's legal right by threatening or committing violent acts."); Julian v. Mission Community Hospital, 11 Cal. App. 5th 360, 395 (2017) ("The plaintiff must show 'the defendant interfered with or attempted to interfere with the plaintiff's legal right by threatening or committing violent acts.' [Citation]"); Cabesuela v. Browning-Ferris Indus., 68 Cal. App. 4th 101, 111 (1998) ("to state a cause of action under section 52.1 there must first be violence or intimidation by threat of violence."); Gabrielle A. v. County of Orange, 10 Cal. App. 5th 1268, 1290 (2017) ("Plaintiffs do not even allege violence, and therefore the Bane Act claim must fail"); Bay Area Rapid Transit Dist. v. Superior Court, 38 Cal. App. 4th 141, 144 (1995) (§ 52.1 "is limited to plaintiffs who themselves have been the subject of violence or threats"). CACI 3066 expressly includes proof of violence or threats of violence as an element of the Plaintiff's case.

There must be proof of actual violence or actual threats of violence; the

abstract possibility of violence is not enough. <u>Cabasuela</u> stated:

> The allegations of plaintiff's third cause of action state that Browning-Ferris interfered with plaintiff's rights by "(i) suspending him; (ii) threatening to terminate his employment; (iii) terminating his employment; (iv) falsely communicating to other employees of [Browning-Ferris] that Plaintiff had threatened Ms. Ashcraft with violence; (v) falsely informing others, whose identities are unknown at this time, that Plaintiff had threatened Ms. Ashcraft with physical violence; (vi) attempting to have Plaintiff's parole revoked; (vii) implicitly threatening Plaintiff with police action, which implied the threat of physical force and government authority perpetrated against the Plaintiff directly, particularly because the Plaintiff would be, or might be, be viewed by the authorities as a dangerous parolee, who had violated his parole by threatening physical violence. . . . [P] . . . [S]uch interference or attempted interference by Defendants was practiced upon him because of his position in a labor dispute regarding health and safety issues."

> These allegations only imply that plaintiff might be subjected to violence by the police. They in no way show actual violence or intimidation by the threat of violence. 68 Cal.App.4th at 111.

Plaintiff does not allege any use of violence or threats of violence. Deputy Remington and community service officers Johnson and Zalunardo never used any violence on Plaintiff and never threatened to use any violence concerning Plaintiff. (Declarations of Remington ¶ 27, Johnson ¶ 18 and Zalunardo ¶ 18)

## C.  PLAINTIFF CANNOT PROVE A SPECIFIC INTENT TO VIOLATE A CONSTITUTIONAL RIGHT

Section 52.1 applies only against a defendant who "interferes by threat, intimidation, or coercion" with the exercise of federal Constitutional rights. That

23

vague language produced a split of authority, but more recent California cases and recent Ninth Circuit cases require proof of a "specific intent to violate" a specific federal Constitutional right.

> [W]here, as here, an unlawful arrest is properly pleaded and proved, the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure. <u>Cornell v. City and County of San Francisco</u>, 17 Cal. App. 5th 766, 803 (2017).

See also <u>Reese v. Cty. of Sacramento</u>, 888 F.3d 1030, 1043 (9th Cir. 2018) (following <u>Cornell</u>).

That standard in turn requires a plaintiff to make two showings:

1. "Is the … right at issue clearly delineated and plainly applicable under the circumstances of the case?" <u>Cornell</u>, 17 Cal.App.5th at 803.

2. "Did the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that … right?" <u>Cornell</u>, 17 Cal.App.5th at 803.

As shown herein, Plaintiff cannot prove either element.

- The facts stated by Officer Stoll, coupled with the physical evidence addressed above, provided ample probable cause to arrest.
- As detailed above, Plaintiff was provided with water to wash off the pepper spray, was taken to a hospital for an OK to book examination, and he did not have any serious medical condition which created a need for immediate medical treatment.
- The other claims fail on the grounds stated above.
- Deputy Remington and community service officers Johnson and Zalunardo never did anything to Plaintiff with the specific intent of depriving Plaintiff of his federal Constitutional rights. (Declarations of Remington ¶ 28, Johnson

MOTION FOR SUMMARY JUDGMENT

1    ¶ 19 and Zalunardo ¶ 19)

2

3                              **CONCLUSION**

4          For all the foregoing reasons it is respectfully submitted that summary

5    judgment should be granted, or alternatively that summary adjudication should be

6    granted as addressed above.

7    DATED: January 4, 2022              ARIAS & LOCKWOOD

8

9                                        /s/    Christopher D. Lockwood

10                                       Attorneys for defendants County of
                                        Riverside, Thomas Johnson, Nina Zalunardo
11                                      and Brian Remington

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR SUMMARY JUDGMENT