**SIDDIQUI LAW, A Prof. Corp.**
Omar A. Siddiqui, Esq. (Bar No. 213581)
Daniel M. Josephson, Esq. (Bar No. 245895)
Nicole Soma, Esq. (Bar No. 322184)
Ryan Gonzales, Esq. (Bar No. 334964)
Imran A. Kamil, Esq. (Bar No. 322478)
695 Town Center Drive, Ste. 230
Costa Mesa, California 92626
Telephone: (714) 384-6650
Facsimile: (714) 384-6651
osiddiqui@sidlawpc.com
djosephson@sidlawpc.com
nsoma@sidlawpc.com
rgonzales@sidlawpc.com
ikamil@sidlawpc.com

Attorneys for Plaintiff,
**JEFFREY N. YOUNG**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| JEFFREY N. YOUNG, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF MENIFEE, a public entity; COUNTY OF RIVERSIDE, a public entity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, a public entity; SCOTT STOLL, an individual; DOUGLAS TODD, an individual; NICOLE RODEROS, an individual; BRIAN REMINGTON, an individual; AND DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 5:17-cv-01630-JGB (SPx)<br><br>JUDGE: Hon. Jesus G. Bernal<br><br>**PLAINTIFF JEFFREY N. YOUNG'S OPPOSITION TO DEFENDANTS CITY OF MENIFEE AND STOLL'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>*[Statement of Genuine Disputes of Material Fact; supporting Declarations; Plaintiff's Compendium of Exhibits; Plaintiff's Notice of Manual Filing; Plaintiff's Objections to Evidence; and [Proposed] Order filed concurrently herewith]*<br><br>Hearing: August 28, 2023<br>Time: 9:00 a.m.<br>Courtroom: 1<br><br>Complaint Filed: August 11, 2017<br>Trial Date: November 7, 2023 |

# TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT................................................................1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY...................2

        A.  Factual Background. .........................................................2

        B.  Procedural History: Criminal Charges and Civil Litigation...................3

III.    LEGAL STANDARD. ....................................................................4

IV.     DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON
        PLAINTIFF'S FALSE ARREST AND IMPRISONMENT CLAIMS..........5

        A. There is a Genuine Issue of Material Fact on Whether Defendant Stoll
           Had Lawful Privilege to Detain Plaintiff for an Alleged Hit-and-Run. ...5

        B. There is a Genuine Issue of Material Fact on Whether Defendant Stoll
           Had Lawful Privilege to Detain Plaintiff for Vandalism. ..........................7

V.      DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON
        PLAINTIFF'S CLAIMS FOR NEGLIGENCE – FAILURE TO PROVIDE
        MEDICAL CARE................................................................................9

VI.     DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON
        PLAINTIFF'S CLAIMS FOR NEGLIGENCE – RETENTION AND
        TRAINING. ...................................................................................13

        A. City's Contention That a Background Check Was Performed on Stoll
           by the Code Enforcement Division is Contradicted by Sworn Testimony.
           ......................................................................................................13

        B. City's Failure to Establish a Genuine Infrastructure for the Code
           Enforcement Division Led to Stoll's Negligent Hiring. ..........................14

        C. Ample Evidence Demonstrates that City Did Not Exercise Due Care in
           Training STOLL...............................................................................15

        D. Ample Evidence Demonstrates that City Did Not Exercise Due Care in
           Retaining Stoll.................................................................................17

VII.    CONCLUSION. ............................................................................21

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY
ADJUDICATION/SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U. S. 242 (1986)..................................4

Balint v. Carson City, 180 F. 3d 1047 (9th Cir. 1999) .................................5

Barsamian v. City of Kingsburg, 597 F. Supp. 2d 1054 (E. D. Cal. 2009)...................4

Celotex Corp. v. Catrett, 477 U. S. 317 (1986) ...........................................4

City of Newport Beach v. Sasse, 9 Cal. App. 3d 803 (1970)..............................5

D.Z. v. Los Angeles Unified School Dist., 35 Cal. App. 5th 210 (2019) ..................14

DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189 (1989) ................11

Easton v. Sutter Coast Hosp., 80 Cal. App. 4th 485 (2000)............................5

Evan F. v. Hughson United Methodist Church, 8 Cal. App. 4th 828 (1992)............19

Frausto v. Dept. of Calif. Hwy Patrol, 53 Cal.App.5th 973 (2020) ..................11

Giraldo v. Dept. of Corr. & Rehab., 168 Cal.App.4th 231 (2008)...................10, 11

Hamburg v. Wal-Mart, Stores, Inc., 116 Cal. App. 4th 497 (2004)...................5

Hayes v. Cty. of San Diego, 57 Cal. 4th 622 (2013)..................................10

Koussaya v. Cty. of Stockton, 54 Cal. App. 5th 909 (2020).........................11

Lugtu v. Calif. Highway Patrol, 26 Cal.4th 703 (2001) ..............................10

M.B. v. City of San Diego, 233 Cal. App. 3d 699 (1991)..............................11

Morgan v. County of Yuba, 230 Cal. App. 2d 938 (1964)............................11

People v. Campbell, 23 Cal. App. 4th 1488 (1994)....................................7

People v. Carbajal, 10 Cal. 4th 1114, (1995)..........................................6

People v. Crouch, 108 Cal. App. 3d Supp. 14 (1980) ................................6

Phillips v. TLC Plumbing, Inc., 172 Cal. App. 4th 1133 (2009) ......................14

Pierce v. Cty. of Marin, 291 F. Supp. 3d 982 (N.D. Cal. 2018)......................11

Stout v. City of Porterville, 148 Cal. App. 3d 937 (1983)...........................19

**Statutes**

Cal. Govt. Code § 815.2 ...............................................................11

Cal. Penal Code § 594...................................................................7

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY
ADJUDICATION/SUMMARY JUDGMENT**

Cal. Penal Code § 837(1) ........................................................................5

**Rules**

Fed. R. Civ. Proc. 56........................................................................4, 5

**Treatises**

Rest.2d Torts § 320 ...........................................................................11

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY
ADJUDICATION/SUMMARY JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY OF ARGUMENT.

On October 7, 2016, Plaintiff JEFFREY N. YOUNG ("YOUNG" or "Plaintiff"), who was already suffering from significant physical limitations was violently and repeatedly punched, kicked, pepper sprayed and humiliated for no other reason than accidentally skidding on a dirt road into a City of Menifee's Code Enforcement Officer's city-issued vehicle (Defendant SCOTT STOLL ("STOLL")). Following the attack by an angry and out-of-control Code Enforcement Officer, the COUNTY OF RIVERSIDE's ("COR") law enforcement personnel did little, if anything, to assist Plaintiff and instead blindly accepted the Code Enforcement Officer's (STOLL) fabricated account of events without seeking or obtaining any corroborating statements and without collecting sufficient evidence. As a result, Plaintiff was subjected to continuing injury by COR, including its Sheriff's Department Deputy, Defendant BRIAN REMINGTON ("REMINGTON"), and Community Service Officer ("CSO"), Defendant THOMAS JOHNSON ("JOHNSON"). Fortunately for Plaintiff, and unbeknownst to Defendants at the time of Plaintiff Young's attack and arrest, video surveillance captured footage of Code Enforcement Officer Stoll's shocking assault and battery on Plaintiff.

Defendants CITY OF MENIFEE ("City" or the "COM") and STOLL (collectively "Defendants") now move for partial summary judgment on Plaintiff's causes of action for False Arrest and False Imprisonment and Negligence, denying any liability for Plaintiff's damages and injuries, despite the presence of numerous facts supporting the contrary. However, as detailed herein, Defendants have failed to demonstrate the absence of any material facts in dispute concerning Plaintiff's claims for false arrest and false imprisonment, negligent failure to provide medical care, and negligent retention and training of STOLL. Accordingly, Plaintiff respectfully requests that this Court deny Defendants' Motion for Partial Summary Judgment in its entirety and allow Plaintiff his day in Court.

1

II.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY.**

   **A. Factual Background.**

   As stated in Plaintiff's Opposition to County of Riverside's Motion for Summary Judgment/Partial Summary Judgment [Dkt. # 126-134], this case arises from an outrageous, despicable, and unprovoked attack upon Plaintiff YOUNG, a disabled father of two. On October 7, 2016, Plaintiff left his home in the late morning to pick up lunch for himself and his disabled daughter. Upon returning home, Plaintiff, who himself is also disabled, found himself violently, repeatedly, and without justification assaulted by Defendant SCOTT STOLL ("STOLL"), a Code Enforcement Officer for Defendant CITY OF MENIFEE ("City" or "COM"). As Plaintiff was driving toward his home, his vehicle slid on the gravel road in front of Plaintiff's driveway and accidentally made contact with STOLL's unmarked vehicle while STOLL spoke on his cell phone several feet away.

   Plaintiff approached STOLL to apologize and to address the minor collision, but STOLL did not respond or acknowledge Plaintiff in any way. Believing STOLL to be preoccupied, Plaintiff intended to deliver lunch to his daughter before discussing the matter further with STOLL. Out of nowhere, STOLL instructed Plaintiff to "Drop it!" referring to the In-N-Out container he carried, and launched into a full, unprovoked, and ferocious attack on Plaintiff. Despite Plaintiff's pleas for STOLL to stop, STOLL proceeded to pin Plaintiff against his vehicle, violently and repeatedly punching Plaintiff in the head and face, and pepper spraying him, all of which caused Plaintiff to fall to the ground in agony. STOLL kicked YOUNG on the ground and stood on his chest in triumph, but at no time did STOLL provide a reason for this attack. While standing on YOUNG's chest, STOLL requested that Deputy BRIAN REMINGTON ("REMINGTON") come to the scene.

   After standing on YOUNG's chest for several seconds, STOLL went back to his vehicle several times, leaving Plaintiff on the ground as he struggled to bring himself into a sitting position. STOLL dropped a water bottle into Plaintiff's lap and went back

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY
ADJUDICATION/SUMMARY JUDGMENT**

to his vehicle. Plaintiff tried to use the water bottle to rinse the pepper spray residue from his face, but his range of motion is also extremely limited due to his disability, and Plaintiff was unable to tilt his head back to pour water from the water bottle into his eyes to alleviate the burning from the pepper spray. The pepper spray residue was left on Plaintiff's face until the next day. Other than dropping a water bottle into Plaintiff's lap, STOLL made no effort to investigate in Plaintiff was injured from being punched repeatedly in the head and neck.

Over the past six and a half years since the attack, Plaintiff's health and psychological state have deteriorated exponentially. In addition to his facial injuries, YOUNG lost the majority of the movement in his right arm, could barely move his neck without significant pain, and experienced numbness and tingling in his extremities. Plaintiff additionally sustained potentially irreparable damage to his spine. Further, Plaintiff is plagued with significant mental and emotional distress, anguish, sleeplessness, anxiety, and other symptoms.

STOLL's atrocious conduct should not have come as any surprise to City, given City's failure to establish a consistent infrastructure, if any infrastructure, for its Code Enforcement Division or to conduct an adequate background check of STOLL prior to his hiring.  City also failed to adequately train STOLL in the real-life aspects of Code Enforcement, including practical training as to interacting with citizens. City also retained STOLL despite the fact that City knew or should have known that STOLL, who had not been trained by City to unlearn some of the policies and procedures in which he was previously trained as a Sheriff's Deputy, and the only CE who elected to wear a tactical vest uniform while on duty, had a propensity to engage physically and aggressively with citizens.

**B. Procedural History: Criminal Charges and Civil Litigation.**

In or around March 2017, Plaintiff submitted Government Claims for Damages to COR and the COM in connection with STOLL's unprovoked attack and Defendants' despicable conduct on or about October 7, 2016. These claims were denied, forcing the

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY
ADJUDICATION/SUMMARY JUDGMENT**

1    instant civil lawsuit.

2        Despite video evidence belying the false police report, Plaintiff was ultimately

3    charged with battery and vandalism based on STOLL and REMINGTON's false and

4    misleading report. The criminal matter of *The People of the State of California v. Jeffrey*

5    *Neal Young* was filed on or about October 20, 2016 in the Superior Court of California,

6    County of Riverside (Southwest – Murrieta Court), Case No. SWM1604573 (the

7    "Criminal Action"). Plaintiff was forced to defend the Criminal Action for two years at

8    great expense, frustration, and at the cost of staying the instant civil lawsuit. Yet on the

9    eve of trial, the Criminal Action was dismissed in its entirety due to insufficient evidence,

10    which ended the stay on the civil matter.

11        In August 2017, Plaintiff Young filed this instant action, against COR, COM,

12    STOLL, REMINGTON, JOHNSON, and ZALUNARDO, seeking recovery for his

13    injuries as a result of this ordeal. The operative Third Amended Complaint ("TAC") was

14    filed on July 9, 2020 [Dkt. # 88.]

15    **III.    LEGAL STANDARD.**

16        A motion for summary adjudication, or partial summary judgment, is governed by

17    the same standard as a motion for summary judgment under F. R. C. P. 56. <u>Barsamian v.</u>

18    <u>City of Kingsburg</u>, 597 F. Supp. 2d 1054, 1061 (E. D. Cal. 2009).

19        Summary judgment is appropriate only where the record, read in the light most

20    favorable to the non-moving party, indicates that "there is no genuine issue as to any

21    material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.

22    R. Civ. Proc. 56(c); see also <u>Celotex Corp. v. Catrett</u>, 477 U. S. 317, 323-24 (1986).

23    Material facts are those necessary to the proof or defense of a claim, as determined by

24    reference to substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U. S. 242, 248 (1986).

25    A factual issue is genuine "if the evidence is such that a reasonable jury could return a

26    verdict for the nonmoving party." <u>Id</u>. At summary judgment, the "evidence of the

27    nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."

28    <u>Id</u>. at 255. The court must not weigh the evidence or determine the truth of the matter, but

only determine whether there is a genuine issue for trial. <u>Balint v. Carson City</u>, 180 F. 3d 1047, 1054 (9th Cir. 1999). The evidence presented by the parties must be admissible. Fed. R. Civ. Proc. 56(e).

## IV.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FALSE ARREST AND IMPRISONMENT CLAIMS.

The elements for a tortious claim of false imprisonment are (1) nonconsensual, intentional confinement of a person, (2) unlawful privilege, and (3) for an appreciable period of time, however brief. <u>Easton v. Sutter Coast Hosp.</u>, 80 Cal. App. 4th 485, 496 (2000), citing <u>City of Newport Beach v. Sasse</u>, 9 Cal. App. 3d 803, 810 (1970). Notably, Defendants do not dispute either the first or third elements and instead concentrate on the second element, unlawful privilege.

It is Defendants' position that STOLL had lawful privilege to detain Plaintiff for California Vehicle Code § 20002 (hit-and-run) and California Penal Code § 594 (vandalism). Private citizens have authority to arrest a person for a public offense, including misdemeanors, committed or attempted in their presence. Cal. Penal Code § 837(1); see also <u>Hamburg v. Wal-Mart, Stores, Inc.</u>, 116 Cal. App. 4th 497, 512 (2004) ("the authority of a private person to make an arrest is more limited than that of a peace officer…A private citizen, however, may arrest another for a misdemeanor only when the offense has actually been committed or attempted in his presence. The mere fact that the private person has reasonable cause to believe a misdemeanor offense has been committed or attempted in his presence is not enough."). Contrary to Defendants' assertions otherwise, the evidence and testimony clearly show that there are genuine issues of material fact as to whether STOLL indeed had lawful privilege to detain Plaintiff these offenses.

### A. There is a Genuine Issue of Material Fact on Whether Defendant Stoll Had Lawful Privilege to Detain Plaintiff for an Alleged Hit-and-Run.

Defendants argue that STOLL, in his capacity as a private citizen, had lawful privilege to detain Plaintiff for allegedly attempting to commit a hit-and-run after their vehicles collided. "The essential elements of a violation of section 20002, subdivision

5

(a) are that the defendant: (1) knew he or she was involved in an accident; (2) knew damage resulted from the accident; and (3) knowingly and willfully left the scene of the accident (4) without giving the required information to the other driver(s)." <u>People v. Carbajal</u>, 10 Cal. 4th 1114, 1123 n.10 (1995), citing <u>People v. Crouch</u>, 108 Cal. App. 3d Supp. 14, 21 (1980).

There is no dispute that Plaintiff knew he was involved in an accident. However, Defendants argue that the undisputed evidence proves that Plaintiff attempted to commit a hit-and-run after the collision. [MPA, 14:13-24.] According to Defendants, Plaintiff did not walk over to the front of STOLL's vehicle, where STOLL was standing, but instead proceeded towards the entrance of his residence, carrying fast food. Additionally, Defendants assert that Plaintiff made no attempt to contact STOLL before STOLL approached him. Nevertheless, Defendants' interpretation of the events is highly disputed.

At his deposition, Plaintiff testified that after the collision, STOLL was still standing in front of his vehicle, talking on the phone. [SGDMF, ¶¶ 14-16, 46.] Plaintiff then got out of his vehicle and told Ms. Lewis that he would open the gate, to pull in her vehicle, and that he had food in his vehicle for his daughter. [SGDMF, ¶¶ 14-16, 47.] At that point STOLL was still on the phone, so Plaintiff retrieved the food from his vehicle and started to walk to Linda to give the food to her. [SGDMF, ¶¶ 16-17, 48.] Plaintiff took a few steps and STOLL came yelling at him to drop the food. [SGDMF, ¶ 49.] Plaintiff told STOLL that it was his handicapped daughter's lunch and that he would put it on the hood of his vehicle. [SGDMF, ¶ 50.] Plaintiff then turned to put the food on his vehicle and was grabbed by STOLL. [SGDMF, ¶ 51.]

Based on the above facts, it is evident that Plaintiff never left the scene of the incident. Furthermore, the surveillance camera video clearly shows that Plaintiff never reached the gate to his house before he was stopped by STOLL and physically assaulted. [SGDMF, ¶ 52.] This is further supported by Deputy REMINGTON's Incident Report which documents that STOLL said that he "walked to Young and

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY ADJUDICATION/SUMMARY JUDGMENT**

1    grabbed him by his right arm so he could not leave the scene. [SGDMF, ¶ 53.]

2        Lastly, the evidence shows that Plaintiff was never cited nor charged for

3    violation of section 20002. Notably, Deputy REMINGTON's Incident Report does not

4    cite any offense based on section 20002, nor did STOLL report to REMINGTON that

5    Plaintiff performed a hit-and-run. [SGDMF, ¶¶ 54-55.]

6        It is clear that the evidence fails to support Defendants' claim that Plaintiff

7    committed or attempted to commit a hit-and-run. When viewing the evidence in the

8    light most favorable to Plaintiff, a reasonable jury could conclude that the Plaintiff's

9    did not knowingly and willfully leave the scene of the accident without giving the

10   required information. As such, summary judgment must be denied.

11   **B.  There is a Genuine Issue of Material Fact on Whether Defendant Stoll**

12   **Had Lawful Privilege to Detain Plaintiff for Vandalism.**

13       Defendants argue that STOLL, a citizen, had lawful privilege to detain Plaintiff

14   for allegedly committing vandalism by striking STOLL's vehicle and causing minor

15   damage. California Penal Code § 594 provides that "every person who

16   maliciously…damages" any "real or personal property not his or her own" is guilty of

17   vandalism. Cal. Penal Code § 594(a)(2). "Maliciously" means "an intent to do a

18   wrongful act" or "a wish to vex, annoy, or injure another person." People v. Campbell,

19   23 Cal. App. 4th 1488, 1493 (1994). Defendants boldly contend that Plaintiff's minor

20   collision with STOLL's vehicle was indisputably malicious and therefore subject to

21   partial summary judgment. However, the facts surrounding Plaintiff's intentions with

22   respect to the collision are heavily disputed.

23       There is no dispute that Plaintiff's vehicle collided with STOLL's vehicle.

24   However, Defendants contend that the undisputed evidence proves the collision was

25   maliciously caused by Plaintiff, citing the absence of visual obstructions on the road,

26   the Plaintiff's high-speed travel, and the lack of evidence of braking. [MPA, 15:17-

27   16:3.] Nonetheless, each of these facts are subject to genuine dispute.

28       First, Plaintiff's view of STOLL's vehicle was obstructed because his neighbor

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY
ADJUDICATION/SUMMARY JUDGMENT**

1   Linda Lewis' Chevy Suburban was parked in front of STOLL's vehicle. [SGDMF, ¶¶
2   8, 56.] Plaintiff also testified that he did not see STOLL's vehicle until he got close to
3   Ms. Lewis' vehicle where he applied his brakes, skidded, and clipped the back of
4   STOLL's vehicle. [SGDMF, ¶ 57.] Photographs captured by Deputy REMINGTON of
5   the vehicles at the scene, along with the surveillance video, reveal that Plaintiff's
6   vehicle veered to the right before the impact, indicating that the collision was not head-
7   on. [SGDMF, ¶¶ 58-59.] Moreover, STOLL testified that Ms. Lewis' vehicle was
8   parked in Plaintiff's driveway with her tail end protruding out onto the road and pointed
9   toward STOLL's vehicle. [SGDMF, ¶ 60.] These facts further demonstrate that
10  Plaintiff made an effort to steer away from colliding with STOLL's vehicle, thereby
11  refuting any claims of willful or wanton conduct.

12          Second, there is a genuine dispute regarding Plaintiff's travel speed leading up
13  to the collision and whether he utilized his brakes. Defendants contend that Plaintiff
14  was traveling 20 to 25 miles per hour *just prior* to impact. At his deposition, Plaintiff
15  testified to driving approximately 20 to 25 miles down his street up until he first saw
16  STOLL's vehicle. [SGDMF, ¶¶ 9, 61.] STOLL testified that Plaintiff was travelling 10
17  to 15 miles per hour at first and that he could have slowed down. [SGDMF, ¶¶ 9, 62.]
18  Regarding the issue of braking, Plaintiff testified that he applied his brakes and skidded
19  before colliding with STOLL's vehicle. [SGDMF, ¶ 63.] The surveillance video further
20  confirms that Plaintiff applied the brakes and skidded before colliding with STOLL's
21  vehicle. [SGDMF, ¶ 63.] Moreover, during his interview with Deputy REMINGTON
22  at the Perris Sheriff's Station, Plaintiff stated that the collision was accidental and
23  mentioned his tires were worn. [SGDMF, ¶ 64.] Similarly, Plaintiff told Deputy
24  REMINGTON at the scene of the incident that "[h]e was not able to stop his vehicle
25  before colliding with Stoll's vehicle because his tire treads are worn." [SGDMF, ¶ 65.]
26  Additionally, Ms. Lewis expressed to Deputy REMINGTON during her interview that
27  she firmly believed the collision was not intentional, as Plaintiff's vehicle slid before
28  the collision. [SGDMF, ¶ 66.]

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY
ADJUDICATION/SUMMARY JUDGMENT**

Lastly, Defendants summarily contend that Plaintiff intentionally cause the damaged because he was "incensed by his daughter's panic" or "intended to approach Stoll's vehicle at a high rate of speed and stop quickly next to it in order to intimidate Stoll." [MPA, 16:4-12.] However, such conjecture by Defendants is unfounded. Defendants have provided no evidence to support these contentions whatsoever. Instead, Defendants' position rests upon unsupported assumptions and conjecture regarding the Plaintiff's motivations during the accidental collision with the Defendant's parked car. Defendant's analysis of the Plaintiff's mental state and intentions leading up to the accident lacks any undisputed evidence, relying instead on speculative claims. Without concrete proof or credible witness testimony to substantiate these assertions, the Defendant's attempt to infer motives behind the Plaintiff's actions remains unsubstantiated. Furthermore, the criminal action against Plaintiff for vandalism based on the exact accident was ultimately dismissed. [SGDMF, ¶¶ 67-68.]

It is clear that the evidence fails to support Defendants' claim that Plaintiff committed or attempted to commit misdemeanor or felony vandalism. When viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that Plaintiff's collision with STOLL's vehicle was neither intentional nor malicious. As such, summary judgment must be denied.

## V.    <u>DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR NEGLIGENCE – FAILURE TO PROVIDE MEDICAL CARE.</u>

Defendants' contentions with regard to any "medical care" provided by STOLL entirely fail to acknowledge STOLL's role in the incident, e.g. that STOLL caused Plaintiff's injuries before Deputy REMINGTON arrived to the scene. In doing so, Defendants' attempt to overcome Plaintiff's claims that the CITY and STOLL were negligent and failed to provide Plaintiff with adequate medical care following STOLL's attack ignores foundational issues and clear disputes of fact. STOLL's initial

failure to provide Plaintiff with adequate medical care following his attack catalyzed Plaintiff's debilitating physical and mental injuries that continue to affect him to this day.

Despite their apparent contention that STOLL was performing a "citizen's arrest," on the issue of medical care, Defendants now appear to contend STOLL was acting as a police officer after Plaintiff YOUNG was subdued and detained. Regardless, under *any* standard, genuine disputes of fact exist as to whether the one (or two) water bottles STOLL provided to YOUNG were sufficient to remove the pepper spray residue from his face. Similarly, despite the fact that YOUNG is visibly and obviously disabled, had been punched repeatedly in the face and neck by STOLL, and had visible bruising thereon, Defendants claim that no further medical care was necessary.

Plaintiff's Negligence claim against STOLL and COM arises from various breaches of duty owed to Plaintiff including, but not limited to:

(a) Placing Plaintiff in peril, and then failing to come to his aid as he was suffering from agony, pain, suffering, and substantial physical and psychological injury; and

(b) Failing to timely acknowledge, treat, and accommodate Plaintiff's injury and/or disability, causing both new injury and exacerbation of existing injury;

(c) Delaying several hours before taking Plaintiff to the hospital for treatment.[1]

To prevail on a negligence claim, a plaintiff must establish: (1) the defendant had a duty to use due care, (2) the defendant breached that duty, and (3) that breach was the proximate or legal cause of the resulting injury. Hayes v. Cty. of San Diego, 57 Cal. 4th 622, 629 (2013). A peace officer may be held liable for negligence to the same extent as other persons. Lugtu v. Calif. Highway Patrol, 26 Cal.4th 703, 715 (2001). "A defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous." Giraldo v. Dept. of Corr. & Rehab., 168 Cal.App.4th 231, 245 (2008), see

---

[1] [TAC, ¶¶ 126, 132.]

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY
ADJUDICATION/SUMMARY JUDGMENT**

also <u>M.B. v. City of San Diego,</u> 233 Cal. App. 3d 699, 704-05 (1991) (A special relationship between the police and an individual may exist where the police created or increased a peril by affirmative acts.); and <u>Morgan v. County of Yuba,</u> 230 Cal. App. 2d 938 (1964) (recognizing a breach of duty where an affirmative act, omission or failure to act places a person in peril or increases the risk of harm). Reasonableness of conduct is determined in light of the totality of the circumstances. <u>Pierce v. Cty. of Marin</u>, 291 F. Supp. 3d 982, 999 (N.D. Cal. 2018).[2]

Notwithstanding these general principles, STOLL's detainment of Plaintiff created a special relationship which imposed a duty onto STOLL to exercise reasonable care. <u>Giraldo,</u> 168 Cal.App.4th at 246-47 *quoting* Rest.2d Torts § 320. "The affirmative duty to protect arises . . . from the limitation which [the government actor] has imposed on [an individual's] freedom to act on his own behalf." <u>DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,</u> 489 U.S. 189, 200 (1989). Defendants' reliance on <u>Frausto v. Dept. of Calif. Hwy Patrol</u>, 53 Cal.App.5th 973 (2020) is misplaced and an example of the extreme.

Here, STOLL's violent attack put Plaintiff in peril and, in his capacity as a Code Enforcement Officer, detained Plaintiff and voluntarily assumed custody over him. After Plaintiff's was detained, STOLL had an affirmative duty to protect Plaintiff from further harm and to act with reasonable care. This included ensuring that Plaintiff was not suffering from the residual effects of the pepper spray and did not require further medical care after being punched repeatedly in the head and neck and being forcibly pushed to the ground. However, despite being aware of Plaintiff's disability, STOLL made no attempt to discern if Plaintiff was injured from his violent attack, apart from providing him with a bottle of water. [SGDMF, ¶¶ 69-71, 77, 94.]

Additionally, genuine disputes of fact preclude summary judgment with respect

---

[2] In general, a public entity is vicariously liable for the torts of its employees to the same extent as a private employer. (Cal. Govt. Code § 815.2; <u>Koussaya v. Cty. of Stockton,</u> 54 Cal. App. 5th 909, 943 (2020).)

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY ADJUDICATION/SUMMARY JUDGMENT**

to the adequacy of the water bottle(s) provided to YOUNG by STOLL. After releasing
YOUNG from his foot, STOLL returned to his vehicle and brought a bottle of water
over to Plaintiff. [SGDMF, ¶¶ 83, 86, 88.][3] STOLL was familiar of the effects of pepper
spray, and instructed Plaintiff to pour water onto his face and turn towards the wind to
alleviate the burning sensation. [SGDMF, ¶¶ 84-85.] STOLL then went back to his car
and failed to ensure that Plaintiff was able to remove the pepper spray with the water .
[SGDMF, ¶ 83.] However, Plaintiff's range of motion is extremely limited due to his
disability, and Plaintiff was unable to tilt his head back to pour water from the water bottle
into his eyes to alleviate the burning from the pepper spray. [SGDMF, ¶¶ 87-88.] Plaintiff
was ***still*** suffering from the lingering pepper spray residue when he was released from
jail the next morning. [SGDMF, ¶ 90.] A reasonable jury could find that Plaintiff's
disability and limited range of motion rendered the water bottle ineffective in removing
the pepper spray residue from Plaintiff's face, and that STOLL's failure to provide
anything other than a water bottle was not reasonably.

Lastly, genuine disputes of fact preclude summary judgment as to whether
STOLL's failure to provide medical care to YOUNG immediately following the
incident was reasonable. During the incident, STOLL punched Plaintiff in the head and
neck repeatedly before forcing him to the ground and spraying him twice with pepper
spray at a point-blank range. [SGDMF, ¶¶ 78, 80-82, 96-97.] Plaintiff informed STOLL
that he was disabled before the incident and had visible bruising on his face a as a result
of STOLL's assault. [SGDMF, ¶ 71, 77-79, 89.] Other than the water, STOLL failed
to take any action to ensure Plaintiff had not been injured in the altercation. In fact,
STOLL admitted to REMINGTON that he "got the water and [he's] done with it."
[SGDMF, ¶¶ 83, 86, 88.] By his own words, STOLL never intended to see if Plaintiff
was injured after STOLL repeatedly punched Plaintiff in the back of the head and
sprayed him with pepper spray. [SGDMF, ¶ 94.]

---

[3] Whether Plaintiff was provided with one or two bottles of water is disputed. [SGDMF, ¶¶ 25, 83.]

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY
ADJUDICATION/SUMMARY JUDGMENT**

There is no dispute that STOLL's attack left Plaintiff with lasting physical and emotional injuries. In addition to his facial injuries, YOUNG lost the majority of the movement in his right arm, could barely move his neck without significant pain, and experienced numbness and tingling in his extremities. Furthermore, Plaintiff has sustained potentially irreparable damage to his spine. The impact of these injuries is further compounded by profound mental and emotional distress, anguish, sleeplessness, anxiety, and other symptoms. [SGDMF, ¶¶ 99-103.]

## VI. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR NEGLIGENCE – RETENTION AND TRAINING.

### A. City's Contention That a Background Check Was Performed on Stoll by the Code Enforcement Division is Contradicted by Sworn Testimony.

City contends, in support of its conclusion that it exercised due care in hiring Stoll, that the Code Enforcement Division ("CE") performed a background check on Stoll prior to hiring which included contacting Stoll's employers and LiveScan fingerprinting. However, City offers no admissible evidence that this occurred. In her deposition testimony, Natalie Jacobs, City's Person Most Qualified with respect to "hiring processes and procedures, including without limitation, the hiring of Scott Stoll for the City of Menifee," was asked if she knew "whether any background check was performed on Scott Stoll prior to his hiring?" [SGDMF, ¶¶ 109-110.] She responded, "I don't know" and further stated that she did not look at any documents to see whether a background check had been performed. [SGDMF, ¶ 110.] She was also unable to identify anyone who could confirm that a background check was performed on Stoll.

In addition, Stoll himself testified that no background check was performed on him by the City. When asked, "Before starting to work for the City of Menifee Code Enforcement, was there any background check that you had to, that was performed on you for that purpose," Stoll replied, "No." [SGDMF, ¶ 111.]

///

**B. City's Failure to Establish a Genuine Infrastructure for the Code Enforcement Division Led to Stoll's Negligent Hiring.**

It is not surprising that no background check was performed on Stoll. The City did not establish many, if any, written rules for its Code Enforcement Division. [SGDMF, ¶ 112.]  In fact, until the Code Enforcement Division for the City was incorporated into the Menifee Police Department, the background process was effectively non-existent. As Ms. Jacobs testified, "so our code enforcement officers are now part of our police department. Therefore, a more extensive background process is currently taking place for code enforcement officers, so we have an external background investigator, if you will, that does a – a deeper dive in doing -- part of that is reference checks and a background check. [SGDMF, ¶¶ 113-114.]

"[Prior to being a part of the Menifee Police Department] the [Code Enforcement] division was under building and safety, and then community -- community development, and then moved over to the police department. [SGDMF, ¶ 115.] While there are *now* at least two individuals at the City who are responsible for "the background process" for new hires in the Code Enforcement Division, there were no such responsible individuals in place at the time that STOLL was hired. [SGDMF, ¶ 116.]

"Negligence liability will be imposed on an employer if it knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." Phillips v. TLC Plumbing, Inc., 172 Cal. App. 4th 1133, 1139 (2009), internal citations omitted.  "[A] negligent supervision claim depends, in part, on a showing that the risk of harm was reasonably foreseeable. Foreseeability is determined in light of all the circumstances and does not require prior identical events or injuries. …[N]egligence is established if a reasonably prudent person would foresee that injuries of the same general type would be likely to happen in the absence of [adequate] safeguards." D.Z. v. Los Angeles Unified School Dist., 35 Cal. App. 5th 210, 229 (2019), internal citations omitted.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY ADJUDICATION/SUMMARY JUDGMENT**

Significantly, STOLL's background, prior to joining the City's Code Enforcement Division was as a Sheriff's deputy. [SGDMF, ¶ 117.] A material dispute of facts exists, at minimum, as to whether the City failed to train STOLL to *unlearn* some of the procedures and policies he learned in traditional law enforcement.

The bald assertions in the Declaration of Craig Carlson in support of City's Motion are unsupported by any documentation whatsoever. As such, the City has failed to demonstrate that: 1) any background check was performed by the City on Defendant STOLL; and 2) there were no areas of concern about Defendant STOLL at the time of his hiring. Based upon these facts, there can be no question that a material dispute of fact exists as to whether the City negligently hired STOLL.

**C. Ample Evidence Demonstrates that City Did Not Exercise Due Care in Training STOLL.**

For any and all training of Code Enforcement Officers during STOLL's tenure, City either abdicated its duties of training or outsourced them in their entirety to another organization. Defendant's Motion contends that CACEO (California Association of Code Enforcement Officers) is "the primary code enforcement education and training entity in California and is the sole entity authorized to certify code enforcement officers." [MPA, 19:28-20:1.] However, it remains unclear whether City utilized a Third Party Education Program Provider ("3PEPP") for its training, as City's Persons Most Qualified apparently did not know the answer to this question. There is also no evidence that City accurately communicated information about STOLL to CACEO.

The coursework provided by CACEO was all class-based work, which did not (at the time of STOLL's hiring) afford a CE candidate the opportunity to participate in practical, real-life training. For example, STOLL testified that he had the authority, as a CE, to "put hands on a…citizen." [SGDMF, ¶ 118.] But this is not supported by the CACEO Regulations. As a result, STOLL was not sufficiently trained by City with respect to interacting with citizens.

In fact, STOLL testified that, at the time he started working for the City, instead

15

1   of establishing appropriate policies, procedures and on-the-job training (if any) tailored

2   to Code Enforcement, "…all we did is transfer all of the Code Enforcement cases from

3   Riverside over to the City of Menifee. And then we adopted all of the County of

4   Riverside ordinances is all that we did. We were now working at the City of Menifee,

5   but using all the County references and ordinances…." [SGDMF, ¶ 120.]

6       STOLL further testified that the training that he did receive were primarily

7   focused on "report writing," and "if you get into an accident, who to inform" but not

8   interacting with citizens. [SGDMF, ¶ 122.]

9       For example, when STOLL learned that Plaintiff's neighbor was "not happy with

10  the service of the Sheriff's Department," STOLL was instructed to visit Plaintiff

11  YOUNG's house regarding the alleged light violation. [SGDMF, ¶ 123.] Instead of

12  checking the light at a time when its reach was visible, STOLL visited Plaintiff's

13  property in the morning, at approximately 9:28 a.m. [SGDMF, ¶ 124.] It would have

14  been impossible to gauge the effects of the light at such a time, especially given the

15  clear, bright, sunny day. Proper training would have alerted STOLL to this reality, as

16  well as prepared him for how to respond if the homeowner – here YOUNG – were to

17  respond by denying that the light extended onto the neighbor's property. No such

18  training was ever provided, however.

19      When City's PMQ was asked how CEs are trained in evaluating the brightness

20  of a light for purposes of issuing a citation, Mr. Carlson responded, in relevant part,

21  "The light must remain -- if it's your light, the brightness of the light, the lumens, must

22  remain on your property. They're not supposed to be extenuating into somebody else's

23  backyard." When asked if CACEO provided training in determining such brightness,

24  Mr. Carlson responded, "No, sir. It's common sense." [SGDMF, ¶¶ 125-126.]

25      Furthermore, despite issuing pepper spray to STOLL, the City did not exercise

26  due care in training STOLL on the proper use thereof, as evidenced by STOLL's

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY
ADJUDICATION/SUMMARY JUDGMENT**

1  conduct in the video surveillance footage and his testimony.[4] It is further evidenced by

2  the testimony of STOLL's former co-worker, Officer Burks, who stated, "We weren't

3  trained by the City." [SGDMF, ¶¶ 127-128.] Clearly, the City's training, if any, did not

4  adequately address de-escalation techniques.

5      The testimony of the neighbor, Radabaugh also reveals that STOLL did not use

6  his City-issued mobile phone in a manner one would expect from a CE. Instead of

7  contacting the Riverside Sheriff's Department through normal channels for backup

8  assistance, STOLL elected to call Plaintiff's neighbor, Mr. Radabaugh and ask him to

9  tell Riverside Sheriff's Deputy Remington to come to Plaintiff's residence following

10  Plaintiff's beating by STOLL. [SGDMF, ¶ 129.] This was because there were no

11  policies or procedures whatsoever for CEs to communicate with the Sheriff's

12  Department at the time of the incident. [SGDMF, ¶ 130.]

13      Based upon these facts, a material dispute of fact exists as to whether the City

14  negligently trained STOLL.

15  **D. Ample Evidence Demonstrates that City Did Not Exercise Due Care in**

16  **Retaining Stoll.**

17      Although STOLL was eventually terminated by City, it was the result of

18  interactions he had with a co-worker, Donna Burks, following the incident with

19  Plaintiff YOUNG, not the incident with YOUNG nor STOLL's prior conduct.

20      Significantly, as a former Sheriff's deputy – a statutory peace officer – City knew

21  or should have known that STOLL, the only CE who elected to wear a tactical vest

22  uniform while on duty, had a propensity to engage *physically and aggressively* with

23  citizens, despite the fact that CEs were not permitted to act "as a police officer…it was

24  [supposed to be] strictly Code Enforcement." [SGDMF, ¶ 131.] In fact, despite the fact

25  that STOLL "was not supposed to be wearing the tactical vest" he did. [SGDMF, ¶

26  132.]  City also knew or should have known about STOLL's aggressive propensities,

27

28  _____
[4] Notably, Officer Burks testified that she was not aware of any CEs who used their pepper spray while working. [Burks DT 26:9-19.]

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY ADJUDICATION/SUMMARY JUDGMENT**

given STOLL's background working "[f]or the Special Enforcement Team" for which he received training in "speed cuffing…grappling on the ground [like] Mixed-Martial Arts…." [SGDMF, ¶ 133.] City should have provided training sufficient for STOLL to distinguish between the role of a CE and that of a California statutory peace officer. They did not.

For example, Officer Burks testified that STOLL "…used or I overheard him use the word, actually, detained. He would detain people, as far as needing to talk to them." [SGDMF, ¶ 134.]

Thus, City continued to retain STOLL as an employee after the incident, despite STOLL's propensities and interactions with YOUNG and others. However, perhaps as an effort by the City to save face, it did not take action against STOLL for the YOUNG incident, it waited until a subsequent incident with a co-worker, Donna Burks, was investigated and adjudicated before terminating STOLL's employment.[5] As to the interactions between STOLL and Officer Burks, Carlson testified, "At the time when he was yelling at Officer Burks it was difficult to calm him down and get him out of the office and ask him to leave the office and the City Hall location…so we could get back to normal as far as interacting with the rest of the staff because it was pretty disturbing." [SGDMF, ¶ 135.] For her part, Officer Burks testified that she was scared that STOLL might hit her and that STOLL exhibited an "enraged look" [SGDMF, ¶ 136.]

Performance evaluations are typically the means by which an employer monitors its employees and determines if such employee should be retained. In this case, STOLL testified that he received only *one* evaluation – from Colin McNie – during his entire employment with the City, "And I'm supposed to receive one every year. And I never received one up to that point in time." [SGDMF, ¶ 137.]

At the August 3, 2021 deposition of Craig Carlson – in his capacity as former

---

[5] It is acknowledged that the incident with Ms. Burks cannot be the sole basis for Plaintiff's claim of negligent retention, given that it was subsequent to the incident with Plaintiff, but it does tend to show that STOLL's propensities for vicious conduct continued even after the incident with Plaintiff.

18

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY
ADJUDICATION/SUMMARY JUDGMENT**

Building and Safety Manager for the City during which time he supervised Code Enforcement when the Building Official was not in the office or not available – Mr. Carlson stated that he was aware of the incident between YOUNG and STOLL from "office banter." Despite this, no action was taken to investigate STOLL's actions during the incident, nor to counsel him on best practices. Instead, the City and its Code Enforcement Division elected to take a blind eye to the conduct of STOLL, likening the incident to nothing more than "an automobile accident." [SGDMF, ¶ 138.] Carlson states that STOLL referred to the incident with YOUNG as "a rear end accident" and nothing more than that, which the City and Carlson took at face value. [SGDMF, ¶¶ 139-140.]  STOLL's co-worker, Officer Burks, also testified that she did not recall STOLL mentioning "anything about an altercation." [SGDMF, ¶ 141.][6] Based upon the video surveillance footage, however, calling the incident "an…accident" without ever mentioning the physical beating STOLL meted out, and without conducting further investigation, demonstrates that the City failed to exercise due care in retaining STOLL.

"An affirmative act which places the person in peril or increases the risk of harm may be negligence…[as] may … an omission or failure to act." Stout v. City of Porterville, 148 Cal. App. 3d 937, 942 (1983). "An agent, although otherwise competent, may be incompetent *because of his reckless or vicious disposition*, and if a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty, *he is subject to liability for harm caused by the vicious propensity*." Evan F. v. Hughson United Methodist Church, 8 Cal. App. 4th 828, 836 (1992), internal citation omitted.

Here, City had more than sufficient notice of STOLL's "vicious disposition" and "vicious propensity" based upon the interactions of STOLL with his co-workers,

---

[6] STOLL testified that at least one person from the City was on-scene immediately following the incident, his supervisor, Colin McNie. [STOLL DT 213:3-17.]

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY
ADJUDICATION/SUMMARY JUDGMENT**

1    including Carlson.

2        Carlson's testimony should be viewed with suspicion, as he has testified on the

3    one hand, "And to be quite honest with you, Sir, I do not recall all the details [of the

4    YOUNG incident] that occurred having had that information secondhand." [SGDMF,

5    ¶ 143.] While on the other hand, Carlson definitively and without hesitation makes

6    extraordinarily broad, sweeping and unsupported conclusory statements in his

7    Declaration in support of Motion. Additionally, despite being designated as the PMQ

8    by the City, Carlson testified that he did not have any role in hiring or promoting

9    STOLL. [SGDMF, ¶ 144.]

10        Moreover, City failed to establish even the most basic processes and procedures

11    for review and retention of employees such as STOLL. When City's PMQ was asked

12    whether, "at the time of the incident, was there any review process within the City of

13    Menifee to review…altercations between code enforcement and civilians," he

14    responded, "there was no [such process]." [SGDMF, ¶ 145.]

15        Note also, that City apparently failed to communicate STOLL's employment

16    status to him, given STOLL's contention that his termination from employment with

17    the City was "overturned." No documentary or other evidence – whether provided by

18    City or otherwise – supports this.

19        Based upon these facts, a material dispute of fact exists as to whether the City

20    negligently retained STOLL. A jury should be permitted to hear evidence as to this

21    cause of action. Therefore, summary judgment and/or partial summary judgment is not

22    warranted.

23    ///

24

25    ///

26

27    ///

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY ADJUDICATION/SUMMARY JUDGMENT**

## VII. <u>CONCLUSION.</u>

For the aforementioned reasons, Plaintiff respectfully requests the Court **<u>DENY</u>** Defendants' Motion for Partial Summary Judgment in its entirety. Plaintiff respectfully requests his day in Court.

Respectfully submitted,

Dated: August 7, 2023              **SIDDIQUI LAW, APC**

By: _/s/ *Daniel Josephson* /_
**OMAR A. SIDDIQUI, ESQ.**
**DANIEL M. JOSEPHSON, ESQ.**
**NICOLE A. SOMA, ESQ.**
**IMRAN A. KAMIL, ESQ.**
**RYAN A. GONZALES, ESQ.**
Attorneys for Plaintiff,
**JEFFREY N. YOUNG**

### <u>WORD COUNT CERTIFICATE</u>

According to Microsoft Word, this Motion contains 6,781 words as counted pursuant to Local Rule 11-6.2.

_/s/ *Daniel Josephson* /_
Daniel Josephson, Esq.

21